UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Richard A. Ortiz,

                Plaintiff,

                                    **Hon. Hugh B. Scott**

                                    13CV163[1]

                v.

                                    **Decision**
                                          **&**
                                    **Order**

Commissioner the of
Social Security Administration,

                Defendant.

Before the Court is the defendant's motion to remand (Docket No. 17).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the defendant Commissioner of Social Security that plaintiff was not entitled to Supplemental Security Income ("SSI").

## PROCEDURAL BACKGROUND

The plaintiff, Richard A. Ortiz ("Ortiz") had previously received SSI benefits pursuant to an application filed on May 24, 2004. Those benefits were terminated when Ortiz was incarcerated in November of 2006. (R. 15). Ortiz was released from incarceration in April of

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket No. 23).

2008. He applied for SSI benefits on April 14, 2008.  Ortiz claimed that he was disabled due to nerve damage, spinal damage and being a "partial paraplegic." (R. 234).  The plaintiff's application was denied and a hearing was subsequently held before an Administrative Law Judge on February 1, 2011 (R. 81-110). and June 17, 2011 (R. 51-80). The ALJ determined that while the plaintiff could preform less than a full range of light work, he retained the residual functional capacity to preform substantial gainful activity under the medical-vocational guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ also found that the plaintiff's "substance use" was not relevant to a finding of disability.  (R. 32).   The Appeals Council denied review of the ALJ's determination on December 14, 2012, making the ALJ's determination the final. (R. 3-5).

## DISCUSSION

Standard of Review

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated  Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative  substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

>   (1) whether the plaintiff is currently working;
>
>   (2) whether the plaintiff suffers from a severe impairment;
>
>   (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
>   (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and

>    (5) whether the impairment prevents the plaintiff from doing any
>    kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, it should be noted that the ALJ has an affirmative duty to fully develop the record.  Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  When the plaintiff's impairment is a mental one, special "care must be taken to obtain a  precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."  See Social Security Ruling 82-62 (1982);  Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).  The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional  capacity.  Washington, supra, 37 F.3d at 1442.

Medical Evidence

The record reflects that in March of 2004, Ortiz fell in his bathtub. (R. 314). The plaintiff, then 32 years of age, went to the hospital in July of 2004 complaining of progressive weakness in his lower extremities. At that time he weighed approximately 300 pounds. An MRI revealed a protruding disc at C4-5 with compression of the spinal cord. Surgery to fuse the disc at C4-5 was performed on July 9, 2004. (R. 315). A second surgery, consisting of a revision of the discetomy at C4-5, as well as a fusion from C4 to C6 was performed on July 12, 2004. (R. 343 - 345). Other diagnoses at that time included paraplegia, obesity, asthma and anxiety panic disorder. (R. 317). Ortiz was granted SSI benefits on October 15, 2004. (R. 15). Those benefits were terminated upon his incarceration in November of 2006.

Upon his application in 2008, the plaintiff no longer used the wheelchair or crutches he required after his surgery in 2004. (R. 21). Dr. Kathleen Kelly examined the plaintiff on September 15, 2008. At that time, the plaintiff was recorded as being 5'11" tall and weighing 345 pounds. He acknowledges using marijuana from 1991 until 2005, and cocaine from 1991 until 2006. (R. 432). It was noted that Ortiz was using a cane to ambulate due to complaints that he loses his balance. Upon examination, the plaintiff's gait was normal with and without the cane; he could walk on both heels and toes without difficulty. His stance and ability to squat were normal, and he needed no assistance in changing, getting onto or off of the examination table. (R. 433). In addition to noting that he had undergone a cervical surgery, the plaintiff was diagnosed with asthma, noncontrolled hypertension and obesity. (R. 434). Dr. Kelly opined that Ortiz may have limits bending and twisting; that he should avoid working around heights; that he should refrain from smoking and respiratory irritants due to his history of asthma; and that lifting,

carrying, pushing or pulling heavy objects "may be problematic" and that Ortiz would require "breaks as necessary." (R. 434). Ortiz was also examined by Dr. Thomas Ryan, a licensed Psychologist also on September 15, 2008. Dr. Ryan noted the plaintiff's history of drug and alcohol use. He also noted that Ortiz was cooperative and that his social skills and presentation were adequate. (R. 428). Ortiz's insight and judgement were found to be "somewhat poor." The plaintiff was diagnosed with polysubstance abuse reported in remission; impulse control disorder; and depressive disorder. Dr. Ryan opined that Ortiz's prognosis was fair if he obtained treatment and remained substance free. (R. 430).

    The record also includes records from the correctional facility in which Ortiz was incarcerated. (R. 381-399; 477-554). These records note the plaintiff's history of asthma (R. 387-388), and herniated disc (R. 389); an x-ray of his chest was unremarkable (R. 393), and his work classification was limited due to his obesity and asthma (R. 398). The plaintiff was seen on January 30, 2010 after he fell on the ice. His gait was observed as steady and no limp was detected. He was prescribed motrin. (R. 479). At that time, he complained of abdominal pain, however radiology tests concluded that there was no evidence of obstruction or blockage. (R. 486). On March 8, 2010, an MRI reflected that the plate installed during the 2004 surgeries was displaced; that there was a disc herniation at C3-4, spinal stenosis at C5-6, as well as narrowing likely impinging exiting nerve roots. (R. 533). A radiology test on March 12, 2010, confirmed the displacement of the cervical sideplate installed in the 2004 impinging upon the posterior pharynx/prirform sinus. (R. 530). Test performed on May 28, 2010 reflected minor degenerative changes with anterior wedging and anterior osteophyte formation at T11 thorough L1 concluding that no acute radiographic findings existed. (R. 528). Ortiz was seen at the Upstate University

Hospital on July 9, 2010 with respect to these issues.  Dr. Kristoffer West stated that he discussed the possibility of removing the displaced hardware from the plaintiff's back, but that the plaintiff declined. (R.  541).  Dr. West stated that physical therapy to work on core strengthening was appropriate. Ortiz was told to take ibuprofen to decrease inflammation. (R.  541).

A mental residual functional capacity evaluation by Dr. M. Totin, dated November 17, 2008 reflected that Ortiz was moderately limited in the ability to work in coordination with others without being distracted by them, in his ability to interact with the public, and his ability to respond appropriately to changes in his work setting or criticism, but otherwise was not significantly limited due to an mental impairment. (R.  438-455).  Dr. Totin described the plaintiff's concentration limitation as mild. (R.  452).

ALJ's Determination Not Substantially Supported

The ALJ determined that the plaintiff retained the residual functional capacity to perform sedentary work to less than a full range of light work.  (R.  25). The Commissioner now agrees that the ALJ's determination in this matter should be reversed and the matter be remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. §405(g).  (Docket No. 17-1 at page 3).  Sentence four of §405(g) provides that [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Here, the Commissioner acknowledges that the ALJ misapplied the law and did not adequately develop the record for the entire period under adjudication. (Docket No. 17-1 at page

4). The Commissioner states that although the period relevant to the plaintiff's application ran from April 14, 2008 until September 19, 2011, the most recent treating source evidence before the ALJ was dated July 9, 2010. (Docket No. 17-1 at page 4). Further, the Commissioner concedes that the ALJ failed to adequately weigh the medical opinions relating to the plaintiff's mental limitations, and did not incorporate any such limitations into her calculation of the plaintiff's residual functional capacity. In addition, the Commissioner also acknowledges that the ALJ failed to adequately explain her failure to credit the opinion of Dr. Kathleen Kelley relating to objective evidence supporting, to some extent, the plaintiff's complaints of pain. (Docket No. 17-1 at page 5; R. 431-435).

The plaintiff objects to the remand for further administrative proceedings, and requests that the Court reverse and remand only for the calculation of benefits. (Docket No. 21). In support of this contention, the plaintiff states only that the ALJ failed to consider the weight of Dr. Ryan's opinion and improperly determined that the plaintiff could engage in substantial gainful activity. (Docket Nos. 21 and 22).

The Court agrees that the ALJ failed to properly consider the opinion of Dr. Ryan or otherwise adequately consider the full extent of the plaintiff's mental impairments. Also, the ALJ did not properly address the clinical evidence supporting the opinion of Dr. Kelly. Further, the ALJ failed to properly develop the record relating to the plaintiff's impairments for the relevant period of time pursuant to the plaintiff's claim. Notwithstanding, however, the Court cannot conclude, based upon this record, that the plaintiff is entitled to SSI benefits at this time. Where, as here, there are gaps in the administrative record or the ALJ has applied an improper legal standard, the Second Circuit has stated that the matter should be remanded to the Secretary for

```
```

further development of the evidence. Parker v. Harris, 626 F.2d 225 at 235 (2d. Cir. 1980). Under such circumstances, a remand for further development of the record, as opposed to calculation of benefits, is warranted. Gross v. Astrue, 2014 WL 1806779 (W.D.N.Y. 2014); Gibson v. Barnhart, 212 F.Supp.2d 180, 183 (W.D.N.Y.2002) (remand for further development of the record appropriate where a gap in the record existed; "[o]nly where the [c]ourt has no apparent basis to conclude that a more complete record might support the Commissioner's decision may it opt simply to remand for a calculation of benefits"). Thus, this matter is remanded to the Commissioner for further administrative proceedings consistent with the above.

## CONCLUSION

For the foregoing reasons, the Commissioner's denial of the plaintiff's application for SSI benefits is VACATED and this matter is REMANDED back to the Commissioner for further administrative proceedings consistent with the above.

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 24, 2014